```
                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ALABAMA
                          SOUTHERN DIVISION
```

NANCY RAE GAUDET,                    )
                                     )
     Plaintiff/ Counter Defendant,   )
                                     )
vs.                                  )         2:09-CV-01339-LSC
                                     )
SEALE HARRIS CLINIC, P.C.,           **)**
                                     )
     Defendant/ Counter Claimant.    )

                          MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, Seale Harris Clinic, P.C. ("SHC"), on June 7, 2010. (Doc. 19.) Plaintiff Nancy Rae Gaudet ("Gaudet") sued SHC for pregnancy, gender, and disability discrimination with respect to her termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2611, *et seq.* (Doc. 1.) SHC filed a counterclaim against Plaintiff for fraud and deceit related to alleged material misrepresentations made concerning her past employment and qualifications. (Doc. 4.) SHC moved

for summary judgment on all of Plaintiff's claims.  The deadline for Plaintiff's response to Defendant's motion for summary judgment has passed, and the issues raised in Defendant's motion are ripe for review.[1]  Upon full consideration of the legal arguments and evidence presented, SHC's motion for summary judgment will be granted in all respects.

---

[1] On June 10, 2010, Plaintiff's counsel moved to withdraw from this action, leaving Plaintiff to proceed *pro se*.  (Doc. 23.)  Counsel attached a letter from the plaintiff, which stated: "Effective immediately, I no longer wish to retain your services as my attorney . . . . I recognize that a Motion for Summary Judgment has been filed by the defendant and that, as of now, a response is due by June 28, 2010.  Please take immediate steps to withdraw as my counsel in the case and request the Court to allow a 30 day extension on all deadlines while I seek other counsel."  (Doc. 23, Ex. A.)  The Court granted counsel's motion to withdraw and granted Plaintiff an additional thirty days to respond to Defendant's motion for summary judgment.  (Doc. 24.)  As of today's date, no attorney has appeared for the plaintiff and no response has been filed.

Because Plaintiff fails to make any argument in response to Defendant's motion for summary judgment, her claims are abandoned.  *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")  However, out of an abundance of caution due to Plaintiff's *pro se* status, the Court has fully reviewed the evidence in the record and issued this Memorandum of Opinion addressing the merits of her claims.

II.	Facts.[2]

Seale Harris Clinic, P.C., is a primary-care medical clinic in Birmingham, Alabama. SHC is currently owned by Dr. James Crenshaw and Dr. Jeffery Clifton. In December 2006, Nancy Gaudet sent a letter and resume to SHC seeking employment as an Acute Care Nurse Practitioner or Certified Registered Nurse Practitioner ("CRNP"). Dr. Crenshaw and Dr. Clifton interviewed and hired Gaudet, and she began working for SHC at the end of January 2007, as a Registered Nurse ("RN"), pending approval from the Alabama Board of Nursing for her to work as a Certified Registered Nurse Practitioner ("CRNP").

At the time Gaudet was hired, Dr. Crenshaw and Dr. Clifton were developing a new service called Intelevisit. Intelevisit allowed patients to call and speak to a nurse practitioner regarding common, non-urgent healthcare needs. A diagnosis and treatment could be prescribed over the

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

telephone for a fee or, if necessary, the patient would be advised to visit the office. Intelevisit calls began in the summer of 2007. According to Dr. Crenshaw, SHC hired Gaudet in anticipation of launching Intelevisit. The doctors needed a nurse practitioner to handle Intelevisit calls.

On April 16, 2007, Gaudet and SHC entered into an employment agreement that provided for her to work as a CRNP and make $80,000 annually. Gaudet informed SHC that she was pregnant in August 2007. Upon learning the news, Dr. Crenshaw responded: "well, you're going to have your hands full with three children." (Pl. Dep. at 98.) The following month, Gaudet requested, and SHC approved, an increase in pay to $92,000 annually. However, Gaudet testified that during a visit to a potential client in October of November 2007, Dr. Crenshaw told her: "whatever you do, do not tell them you're pregnant." (*Id*. at 100-01.)

Gaudet was hospitalized for complications due to her pregnancy in November and December 2007, and placed on bed rest for part of December 2007. According to Gaudet, when she was hospitalized in November 2007, Dr. Crenshaw told her "take care of yourself and hurry back . . . you know, you've got to do what you've got to do right now, a premature baby is the

last thing that you want." (*Id*. at 102.)  Gaudet testified that Dr. Crenshaw also shared with her that his sister had a premature baby with complications and "that was the last thing that I wanted." (*Id*.)

When Gaudet returned to work in December 2007, she was offered an amendment to her employment contract.  The amendment provided that Gaudet would be paid on an hourly basis at the rate of $44.23 per hour.  At this rate of pay, Gaudet would earn the same $92,000 per year if she worked 40 hours per week.  The amendment also required Gaudet to work a minimum of 4 hours per day on the days she worked and a minimum of three days per week.  Gaudet signed the amendment on December 21, 2007.

In early January 2008, Gaudet was again placed on bed rest due to her pregnancy.  Gaudet gave birth prematurely on January 31, 2008.  Her estimated due date was April 15, 2008.  Doctors diagnosed Gaudet's newborn daughter with intraventricular hemorrages (bleeding of the brain), sepsis, and meningitis.

According to Dr. Crenshaw, he and Dr. Clifton decided in February 2008 to end Intelevisit because they believed it was not working as they hoped and would not be financially viable.  They had little to no success in

signing up hospitals and employers for the service, and they had only 136 calls between January 1, 2008, and February 15, 2008.  Dr. Crenshaw and Dr. Clifton began to wind down the service, ultimately ending calls after April 2008 and withdrawing from the entity on May 1, 2008.

Dr. Crenshaw testified that in conjunction with their decision to end Intelevisit, Dr. Crenshaw and Dr. Clifton determined that a nurse practitioner or CRNP was no longer needed in SHC's practice.  About three weeks after giving birth, Gaudet informed SHC that she would be returning to work.  On February 21 or 22, 2008, SHC asked Gaudet to come in for a meeting.  At that meeting, Dr. Crenshaw told her that she had "been through hell," but "we don't have any other way to do this . . . we're letting you go." (Pl. Dep. at 114.) Since terminating Gaudet's employment, SHC has not hired another CRNP or nurse practioner.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

    Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

   A.   Title VII Claims.

Gaudet contends that SHC unlawfully discriminated against her based on her gender and pregnancy, in violation of Title VII, when she was terminated.  Because Gaudet has not submitted direct or statistical evidence of unlawful discrimination, we analyze her claim using the analytical framework set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of illegal discrimination.  Thereafter, the prima facie case creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue.  "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered

nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

It is undisputed that Gaudet's position as a CRNP at SHC was eliminated. In order to establish a prima facie case of discrimination when a position has been eliminated in its entirety, a plaintiff must show: "(1) that she was in a protected . . . group and was adversely affected by an employment decision, (2) that she was qualified for her current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of [gender or pregnancy] in reaching that decision." *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003) (quoting *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996)); *see also Hill v. Emory Univ.*, 346 Fed. Appx. 390, 393 (11th Cir. Aug. 25, 2009). In order to satisfy the third requirement of intent, "the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining a plaintiff because of [her gender or pregnancy], or (2) defendant regarded [plaintiff's gender or pregnancy] as a negative factor in such consideration." *Allison v. W. Union Tel. Co.*,

680 F.2d 1318, 1321 (11th Cir. 1982) (quotations omitted).  For the purposes of summary judgment only, the Court will assume that Gaudet has established a prima facie case of discrimination and turn to SHC's proffered reason for its termination decision.

SHC has introduced evidence that when Dr. Crenshaw and Dr. Clifton decided Intelevisit was not financially viable, they also decided they no longer needed a nurse practitioner or CRNP in their practice.  "By presenting [a] legitimate, nondiscriminatory reason[] for [Plaintiff's] termination, [SHC] has rebutted the presumption of discriminatory intent." *Standard*, 161 F.3d at 1332.  "In light of this, [Gaudet] must now create a genuine issue of material fact as to whether the reason[] advanced [is] pretextual."  *Id*.  "In other words, [Plaintiff] must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for [her] discharge." *Id*. (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).)  Gaudet "may do this (1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the

evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Id.* (citing *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir.1996). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citations and footnote omitted). The ultimate burden of proving intentional discrimination is on the plaintiff. *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1162 (11th Cir. 2006).

    The record shows that shortly after making the decision to terminate Intelevisit and end Gaudet's employment, Dr. Crenshaw and Dr. Clifton stopped taking calls and formally withdrew from the Intelevisit enterprise. SHC had not utilized a CRNP or nurse practitioner before hiring Gaudet and starting Intelevisit, Plaintiff's position was eliminated, and no one has been hired since to replace her. Plaintiff argues in her deposition that she believed Intelevisit was going well and Dr. Crenshaw and Dr. Clifton had plans for expansion in the first months of the business, but she does not

offer sufficient evidence why Defendant's reason should not be believed or that unlawful discrimination more likely motivated the defendant's decision. Gaudet simply has not met her burden to establish that Defendant's stated reason for her termination is pretext for gender or pregnancy discrimination. Accordingly, summary judgment will be granted in favor of SHC on these claims.

B.  ADA Claim.

Gaudet also contends that SHC violated the ADA when it terminated her employment. She has argued that SHC regarded her as disabled or ended her employment because of her association with a child SHC regarded as disabled. (Doc. 18 at 4.) Assuming without deciding that Plaintiff has established a prima facie case with regard to either of these claims, Gaudet's ADA claims fail for the same reasons her gender and pregnancy claims fail.

"Once a plaintiff establishes a prima facie case of discrimination, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (citing *Chapman*, 229 F.3d at 1024 (11th Cir. 2000) (en

banc)). If the defendant articulates a legitimate, non-discriminatory reason, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id*. at 1243 (quoting *Chapman*, 229 F.3d at 1024). "If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment." *Id*. (citing *Chapman*, 229 F.3d at 1024-25).

As outlined previously, Dr. Crenshaw and Dr. Clifton stopped taking calls and formally withdrew from the Intelevisit enterprise soon after making the decision to terminate Intelevisit and end Gaudet's employment. SHC did not use a CRNP or nurse practitioner before hiring Gaudet, the nurse practitioner position was eliminated, and no one has been hired to replace Gaudet. There is no evidence of animus based on disability or that Defendant believed its costs would increase due to Plaintiff's or her child's alleged disabilities. SHC is entitled to summary judgment because Plaintiff

has not met her burden to establish that Defendant's stated reason for her termination is pretext for disability discrimination.

V.   Conclusion.

For the reasons set forth above, SHC's motion for summary judgment will be granted in all respects.  A separate order will be entered.

Done this <u>5th</u> day of <u>October 2010</u>.

 

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297